Martin S. King, Esq.
WORDEN THANE P.C.
Attorneys at Law
321 W. Broadway, Ste. 300
Missoula, MT 59802
Telephone: (406) 721-3400
Facsimile:  (406) 721-6985
Email: mking@wordenthane.com

Attorneys for Plaintiff

FILED
KATHIE VIGLIOTTI
CLERK OF DISTRICT COURT

2020 JUL 2 AM 8:57

## MONTANA TWELFTH JUDICIAL DISTRICT COURT, HILL COUNTY

HAYNES INVESTMENTS, LLC, a limited
liability company

    Plaintiff,

vs.

PLAIN GREEN, LLC, a limited liability company

    Defendant.

Judge: **KAYDEE N. SNIPES RUIZ**

Cause No. DV-20-065

**COMPLAINT**

Plaintiff, HAYNES INVESTMENTS, LLC, ("Haynes Investments"), a Texas limited liability company, f/k/a Haynes Investment, Inc., and for its complaint against Defendant PLAIN GREEN, LLC, ("Plain Green") states as follows:

### INTRODUCTION

1. This case stems from Defendant Plain Green's failure to honor its contractual obligations. Specifically, in exchange for a four million two hundred sixty-nine thousand dollar loan ($4,269,000), provided by Haynes Investments, Plain Green agreed, *inter alia*, to indemnify, defend, and hold harmless Haynes Investments against any and all claims, damages,

losses, liabilities and expenses (including attorneys' fees), arising from the very same $4,269,000 loan agreement. In 2017 and 2018 three consumer class actions were initiated against Haynes Investments over the alleged impropriety of Plain Green's use of the $4,269,000 loan. Despite the presence of an explicit indemnification provision in the parties' 2015 Promissory Note, Plain Green refuses to fulfill its end of the bargain. Accordingly, Haynes Investments has no other choice but to initiate this lawsuit to recover the damages it suffered and will continue to suffer due to Plain Green's breach of the 2015 Promissory Note.

## PARTIES

2. The Plaintiff Haynes Investments, LLC is and was at all relevant times, a limited liability company organized under the laws of the State of Texas.

3. Plain Green, LLC is and was at all relevant times a wholly owned company of the Chippewa Cree Tribe of Rocky Boy's Reservations and was incorporated under the laws of the Chippewa Cree Tribe with its principal place of business located in Box Elder, Montana.

## JURISDICTION AND VENUE

4. This Court has personal jurisdiction over the Plaintiff.

5. This Court has subject matter jurisdiction over this action and personal jurisdiction over Plain Green because the Chippewa Cree Tribe, through its tribally-owned entity, Plain Green, executed a clear and express waiver of tribal sovereign immunity. Exhibit 1, pp. 3-4 (Section 8 Waiver of Sovereign Immunity).

6. Venue is proper before this Court pursuant to §25-2-118(1), M.C.A. because Plain Green is deemed to reside in Hill County, Montana. Venue is also proper pursuant to §25-2-121(1)(a) and (b) because Hill County is the location of the Defendant, is where the contract was to be performed, and is the proper venue as stated in the contract.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

7. In the early 2000s, the Chippewa Cree Native American Tribe, residing on the Rocky Boy's Reservation in northcentral Montana, faced record unemployment of nearly 70%. In an effort to bring a new industry to the reservation and spur economic growth, the Tribe decided to open an online consumer lending company that would operate out of the Rocky Boy's Reservation, generate revenue for the community, and spur tribal employment.

8. In 2010, the Chippewa Cree Tribe unsuccessfully attempted to start up an online consumer lending business with a separate unrelated entity known as Encore. The first attempt by the Chippewa Cree Tribe at consumer lending ultimately failed because the Tribe did not secure the funding required to originate the loans and get the business off the ground.

9. The Tribe's foundational law is its constitution, bylaws, and Corporate Charter which establishes the Tribal Business Committee and imbues that body with legislative authority, including authority to manage the Tribe's economic affairs and to delegate economic authority to organizations it charters.

10. To facilitate the new online consumer lending business model, the Tribe made the necessary changes to its tribal constitution, bylaws, rules, and regulations, allowing for the incurrence of debt, commercial lending, the creation of a tribal limited liability company, and for the waiver of tribal sovereign immunity by the Tribe, the Tribe's agents, and/or the Tribe's limited liability companies.

11. After implementing and/or following all of the necessary rules and regulations to operate a consumer online lending company, the Tribe created Plain Green, LLC.

12. To operate the online consumer lending program from the Rocky Boy's

Reservations, the Tribe needed to secure several million dollars in funding. The funding was needed on a recurrent basis so Plain Green could capitalize the consumer loans. The Tribe intended to make money in part by charging consumers a higher interest rate than the rate they would pay on the Plain Green loan. Under Plain Green's business model, the more commercial loans they originated, serviced, and ultimately collected, the greater the revenue for Plain Green, and ultimately the Tribe.

13. In 2015, Haynes Investments served as the source of the $4,269,000 loan Plain Green needed to operate its online consumer lending program.

### Promissory Note

14. On or about June 24, 2015, Haynes Investments and Plain Green entered into a written contract entitled, Promissory Note (the "Agreement"). A true and correct copy of the Agreement is attached hereto as **Exhibit 1** and incorporated herein by reference. In the Agreement, Haynes Investment is referred to as "Holder," while Plain Green, is referred to as "Borrower."

Under the Agreement, Haynes Investments provided a $4,269,000 loan to Plain Green.

15. The loan was then to be used to assist Plain Green with the funding of the Tribe's installment loan program under Title 10 of the Tribe's Credit Transaction Code as adopted by the Tribe by tribal resolution No. 19-11 on March 11, 2011.

16. The profits from the online consumer lending program were then to be used: a) to assist in enhancing the social, economic, educational, and health needs of the Tribe; b) to assist in enhancing and expanding the tribal e-commerce opportunities for the Tribe and its members; c) to provide essential governmental services for the Tribe and its members; and d) to enhance tribal economic self-sufficiency, self-determination, and self-governance over tribal

governmental programs, tribal trust resources, and to promote the health, welfare, and safety of members of the Tribe.

17. Plain Green did not have the funding to participate in an online lending business without raising capital from another source. In 2015, Haynes Investments served as the much-needed source of liquid capital for the Tribe's consumer lending program. Haynes transferred the funds to Plain Green and Plain Green then used the money to originate consumer loans.

18. Haynes Investments did not directly participate in any aspect of the transaction between Plain Green and the individual consumers. After signing the Agreement, Haynes provided the $4,269,000 loan to Plain Green in fulfillment of its contractual obligations—nothing more. Haynes Investments did not control, did not own an interest in, and did not fund the loans made by Plain Green to the consumer borrowers. Haynes Investment did not receive the proceeds of the loans, and any payments by Plain Green to Haynes Investments were merely repaying its line of credit.

19. In exchange for the $4,269,000 loan, Plain Green agreed to a number of terms beneficial to Haynes Investments, including but not limited to an indemnification provision (Section 6 in the Agreement) and a provision expressly waiving tribal sovereign immunity (Section 8 in the Agreement). It was the Tribe's intent to waive sovereign immunity as provided in Section 8 in the Agreement between Plain Green and Haynes Investments.

20. The broad indemnification provision requires Plain Green to indemnify and hold harmless Haynes Investments from any and all claims, damages, losses, liability, expenses, fees, charges of internal or external counsel used by Haynes Investments, and all other litigation preparation.

21. Section 6 of the Agreement, entitled "Costs and Expenses" provides as follows:

> The Borrower shall reimburse Holder upon demand, for all reasonable out-of-pocket costs and expenses incurred in connection with the collection and/or enforcement of this Note or any amounts payable pursuant hereto or with respect to any litigation or controversy arising from this Note (including, without limitation, attorneys' fees) whether or not suit is actually instituted. Exhibit 1, p. 3.

22. Section 6 not only requires Plain Green to ultimately indemnify Haynes Investments from any judgments arising from the Agreement, but it also requires Plain Green to defend the Haynes Investments, including paying all associated attorneys' fees and costs.

23. Section 6 further requires Plain Green to reimburse Haynes Investments for the attorneys' fees and costs associated with this enforcement action for breach of contract and/or declaratory judgment. The protections of Section 6 provide broad indemnification both from third-party lawsuits and also in any enforcement action for breach of the Agreement.

24. Plain Green drafted the June 24, 2015 Agreement.

**Plain Green Waived its Sovereign Immunity for Legal Proceedings with Plaintiff**

25. The Chippewa Cree Tribe's governing body, the Business Committee, organized and chartered Plain Green under the Tribe's Limited Liability Company Act. According to Plain Green's Articles of Incorporation, Plain Green is subject to the laws of the Tribe and operates as an economic arm of the Tribe. It engages in commercial activities that generate revenue for the Tribe, which serve the Tribe's social, economic, educational, and healthcare needs. The Tribe regulates Plain Green pursuant to the Chippewa Cree Tribal Lending and Regulatory Code, and Plain Green is subject to the oversight of the Tribal Consumer Protection Bureau, an independent governmental regulatory subdivision.

26. The doctrine of tribal immunity from suit is well established. *See Kiowa Tribe of Okla. v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 754 (1998) (reaffirming that an Indian tribe is not subject to suit unless "Congress has authorized the suit **or the tribe has waived**

**immunity**") (emphasis added). To relinquish tribal immunity, a tribe's waiver must be clear and unequivocal. *See C & L Enterprises, Inc. v. Citizen Band of Potawatomi Indian Tribe of Okla.*, 532 U.S. 411, 418 (2001) (citing *Oklahoma Tax Comm'n v. Citizen Band of Potawatomi Tribe of Okla.*, 498 U.S. 505, 509 (1991)).

27. The Chippewa Cree Tribe unequivocally and clearly waived its tribal sovereign immunity as to the tribal entity, Plain Green, in the Agreement. Specifically, the Tribe provided a sweeping waiver of immunity for the enforcement or interpretation of the Agreement and any related enforcement action. Article 8.15 of the Agreement, entitled "Waiver of Sovereign Immunity" provides as follows:

> Borrower irrevocably (i) waives any sovereign immunity and any other privilege that may be asserted with such immunity or privilege from unconsented suit or proceedings and (ii) consents to any suit or any other legal proceedings, alternative dispute resolution, arbitration, enforcement and collection of judgment or award, injunction, specific performance, or declaratory relief conditioned only upon following limitations: the waiver is limited to actions or proceedings to (a) interpret or enforce the provisions of this Note, (b) assert or enforce equitable relief, including without limitation specific performance, (c) assert any damage claims arising out of the breach of this Note, and (d) enforce any agreement, order, judgment or ruling resulting from such an action including, but not limited to, any execution and collection of monetary damages, specific performance or injunctive relief. Actions or proceedings may be brought or made in a federal court sitting in the State of Montana (and including any court competent to hear appeals from those courts), but if such federal court is unable or unwilling to exercise jurisdiction, then in a Montana state court (and including any court competent to hear appeals from those courts). The Borrower and the Holder hereby acknowledge that this express waiver extends only to actions brought by Holder, its successors and assigns (and not any other party) against Borrower or any other entity of the Tribe for claims of any kind arising under this Agreement. Exhibit 1, pp. 3-4

28. This action seeks the enforcement and/or the interpretation of the 2015 Promissory Note containing the above express and unequivocal waiver. Accordingly, the claims

**COMPLAINT** Page 7

contained herein, fall within the express exception of *Okla. v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 754 (1998). Simply put, Plain Green is not entitled to sovereign immunity in this case, therefore this Court has subject matter jurisdiction over the claims.

### Covered Lawsuits

29. A consumer class action lawsuit was initiated in the Eastern District of Virginia on January 22, 2018, that named Haynes Investments as a defendant. Exhibit 2 (Complaint from the United States District Court for the Eastern District of Virginia, Case No. 3:18-CV-00048-MHL, entitled: *Darlene Gibbs, et al., v. Haynes Investments, LLC, et al.*).

30. A consumer class action was also initiated in the Northern District of California on February 23, 2018, that named Haynes Investments as a defendant. Exhibit 3 (Complaint from the United States District Court for the Northern District of California, Case No. 3:18-CV-01200, entitled: *Kimertra Brice, et al., v. Kenneth Reese, et al.*).

31. A consumer class action was also initiated in the United States District Court for the District of Vermont on November 21, 2017, that named Haynes Investments as a defendant. Exhibit 4 (Complaint from the United States District Court for the District of Vermont, Case No. 5:17-CV-00233, entitled: *Jessica Gringras et al., v. Vistory Park Capital Advisors, LLC, et al.*).

32. These three meritless consumer class action lawsuits alleges various violations of consumer protection laws, activity allegedly covered under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, and violations of state usury laws. The consumer class action plaintiffs allege that the Chippewa Cree tribal online consumer lending program run by Plain Green is a "rent-a-tribe scheme." E.g., Exhibit 2, p. 3.

33. The underlying lawsuits are anticipated by and covered under the indemnification provisions of the Agreement. For example, the consumer class action's meritless complaint

alleges the following acts arising out of the Agreement:

> (a). Haynes Investments continued to invest substantial funds in [Plain Green's] rent-a-tribe enterprise, and it also conducted and participated in the enterprise's affairs. Exhibit 2, p. 5.
>
> (b). Defendant Haynes Investments, LLC provided [Plain Green] substantial capital used to make high-interest loans to consumers and participated in the affairs of the enterprise as explained below. Exhibit 3, p. 4.
>
> (c). ...Defendant Haynes Investments will arrange to provide funding to the Tribe to enable it to make each of the Loans.' Exhibit 4, p. 20

34. The consumer class actions do not allege claims, damages, losses, liabilities or expenses attributable solely to Haynes Investments gross negligence or willful misconduct.

35. Though meritless, the allegations of the consumer class actions are based on Plain Green's consumer lending program, Plain Green's use of the $4,269,000 loan, and Plain Green's June 24, 2015 lending agreement with Haynes Investment. As the basis of the lawsuits arises from the Plain Green's borrowing of funds from Haynes Investments, including the use of the $4,269,000 loan to fund the tribal consumer lending program, there can be no reasonable dispute that they are anticipated by and covered under the indemnification provision in Section 6 of the Agreement.

36. Haynes Investments expended and continues to expend significant amounts of time and money defending against the claims asserted in the consumer class actions and the associated litigation. Specifically, Haynes Investments incurred damages, losses, liabilities, and expenses (including attorneys' fees and costs) in defending against the covered consumer class actions.

37. Haynes Investments expended and continues to expend significant amounts of time and money to enforce the Agreement against Plain Green, including attorneys' fees and costs.

### Plain Green's Refusal to Honor its Commitments

38. Haynes Investments notified Plain Green of the three covered consumer class actions, and made a demand for defense and indemnification in accordance with the terms of the Agreement.

39. Plain Green acknowledged the notification and demand, but issued a blanket refusal to defend, indemnify, and/or hold harmless Haynes Investments.

40. When Haynes Investments presented the qualifying claims and expenses under the indemnification provision in Section 6, (i.e., the consumer class actions), Plain Green refused to honor its contractual obligations because the Tribe did not want to set a precedent of indemnifying and defending parties without a Court compelling its compliance. When asked why Plain Green would not live up to its contractual obligations, an agent of Plain Green replied "because the Tribe does not want to set that kind of precedent" or words to that effect.

41. Despite the presence of all necessary conditions, Plain Green did not indemnify, defend, and/or hold harmless Haynes Investments in accordance with the provisions and requirements of Section 6 of the Agreement.

## COUNT I
### (Breach of Contract)

42. Haynes Investments repeats and realleges the allegations contained in the above paragraphs as though fully set forth herein.

43. The Agreement is a binding contract between Haynes Investments and Plain Green.

44. Haynes Investments performed under the terms of the Agreement without breach.

45. Plain Green breached Section 6 of the Agreement by refusing and/or failing to indemnify, defend, and/or hold harmless Haynes Investment from and against the claims set

forth in (1) *Darlene Gibbs, et al., v. Haynes Investments, LLC, et al.,* Case No. 3:18-CV-00048, in the United States District Court for the Eastern District of Virginia; (2) *Kimertra Brice, et al., v. Kenneth Reese, et al.,* Case No. 3:18-CV-01200, in the United States District Court for the Northern District of California; and/or (3) *Jessica Gringras et al., v. Vistory Park Capital Advisors, LLC, et al.,* Case No: 5:17-CV-00233, the United States District Court for the District of Vermont.

46. Haynes Investments has been damaged by Plain Green's breaches.

47. All conditions precedent to Haynes claim for breach of contract are satisfied.

48. Section 6 of the Agreement includes express language requiring Plain Green to pay Haynes Investments' attorneys' fees and incurred expenses in this adversarial proceeding seeking enforcement of the Agreement. Exhibit 1, pp. 3-4. Haynes Investments has been compelled to retain attorneys to prosecute this action and are entitled to reasonable attorneys' fees, costs, and expenses incurred herein pursuant to Section 6 of the Agreement.

49. There may be additional breaches of the Agreements' warrantees and covenants that are unbeknownst to Haynes Investments at this time. Haynes Investments reserve the right to amend these claims to add in additional allegations.

## COUNT II

(Declaratory Relief)

50. Haynes Investments repeats and realleges the allegations contained in the above paragraphs as though fully set forth herein.

51. A justiciable controversy exists between Haynes Investments and Plain Green under the Uniform Declaratory Judgment Act, codified in Montana at M.C.A § 27-8-101 et seq. Such a controversy exists where a claim of right is asserted against one who has an interest in contesting it.

52. Haynes Investments and Plain Green are parties to the Agreement, discussed in detail above.

53. Pursuant to Section 6 of the Agreement, Plain Green must indemnify, defend, and hold harmless Haynes Investments "…with respect to any litigation or controversy arising from the [June 25, 2015 Promissory] Note (including, without limitation, attorneys' fees) whether or not suit is actually instituted." Exhibit 1, p. 3.

54. To date, Plain Green has refused and/or failed to comply with Section 6 of the Agreement. Indeed, Plain Green expressly stated it would not comply with its duty to indemnity, defend, and hold harmless Haynes Investments in any proceeding.

55. Haynes Investments therefore is entitled to a declaratory judgment that:

    a. The Agreement is a valid and enforceable contract;

    b. Haynes Investments is entitled to indemnification for the claims brought in: (1) *Darlene Gibbs, et al., v. Haynes Investments, LLC, et al.,* Case No. 3:18-CV-00048, in the United States District Court for the Eastern District of Virginia; (2) *Kimertra Brice, et al., v. Kenneth Reese, et al.,* Case No. 3:18-CV-01200, in the United States District Court for the Northern District of California; and (3) *Jessica Gringras et al., v. Vistory Park Capital Advisors, LLC, et al.,* Case No. 5:17-CV-00233, the United States District Court for the District of Vermont.

    c. That Haynes Investments is entitled to be indemnified and defended by Plain Green with respect to any litigation or controversy arising from the June 25, 2015 Note (including, without limitation, attorneys' fees) whether or not suit is actually instituted.

    d. That Haynes Investments is entitled to its attorneys' fees and expenses incurred in connection with, among other things, this enforcement action and the consumer class action pending in: (1) *Darlene Gibbs, et al., v. Haynes Investments, LLC, et al.,* Case No. 3:18-CV-00048, in the United States District Court for the Eastern District of Virginia; (2) *Kimertra Brice, et al., v. Kenneth Reese, et al.,* Case No. 3:18-CV-01200, in the United States District Court for the Northern District of California; and (3) *Jessica Gringras et al., v. Vistory Park Capital Advisors, LLC, et al.,* Case No. 5:17-CV-00233, the United States

District Court for the District of Vermont.

## COUNT III

(Breach of the Covenant of Good Faith and Fair Dealing)

56.     Haynes Investments repeats and realleges each and every allegation contained above as if the same were set forth fully herein.

57.     The 2015 Promissory Note between Haynes Investments and Plain Green constitutes a valid and binding contract under Montana law.

58.     As a matter of Montana law, every contract includes an implied covenant of good faith and fair dealing. Accordingly, the 2015 Agreement contained an implied covenant on the part of Plain Green to act in good faith and deal fairly with Haynes Investments in connection with all aspects of the parties' performance.

59.     As set forth more fully in this Complaint, the parties entered into a contractual agreement whereby Haynes Investments provided Plain Green a $4,269,000 loan.

60.     As part of the Agreement, Plain Green represented and warranted that it would indemnify, defend, and hold harmless Haynes Investments "with respect to any litigation or controversy arising from [the 2015 Promissory] Note (including, without limitation, attorneys' fees) whether or not suit is actually instituted."

61.     All conditions precedent to the obligations of Plain Green to fulfill the terms of the 2015 Agreement have occurred. Despite Haynes Investments' fulfillment of its obligations under the Agreement, and working in good faith with Plain Green, Plain Green has failed to fulfill its obligations under the Agreement.

62.     Plain Green breached, and continues to breach, the implied covenant of good faith and fair dealing in the Agreement by, among other things, failing to indemnify, defend, and hold

harmless Haynes Investments.

63. For example, when presented with qualifying claims and expenses under the indemnification provision in Section 6, (i.e., the three consumer class actions), Plain Green refused to honor its contractual obligations because the Chippewa Cree Tribe did not want to set a precedent of indemnifying and defending a claim without a Court Order compelling Plain Green's compliance. When asked why Plain Green would not live up to its contractual obligations, an agent of Plain Green replied "because the Tribe does not want to set that kind of precedent" or words to that effect. Such an indefensible, unwarranted, and bad faith position, constitutes a breach of the covenant of good faith and fair dealing.

64. As a direct and proximate cause of Plain Green's breach of the implied covenant of good faith and fair dealing, Haynes Investments has been damaged.

65. Haynes Investments was compelled to retain attorneys to prosecute this action and is entitled to reasonable attorneys' fees, costs, and expenses incurred herein.

### COUNT IV

(Anticipatory Repudiation – *Plead in the Alternative*)

66. Haynes Investments repeats and realleges the allegations contained in the above paragraphs as though fully set forth herein.

67. The Agreement is a binding contract between Haynes Investments and Plain Green.

68. Haynes Investments performed under the terms of the Agreement without breach.

69. Section 6 of the Agreement includes express language requiring Plain Green to pay Haynes Investments' reasonable attorneys' fees, costs, and expenses incurred in this adversarial proceeding seeking enforcement of the Agreement. Exhibit 1, pp. 3-4.

70. Plain Green demonstrated and continues to demonstrate a definite unequivocal

and absolute intent to not pay Haynes Investments' reasonable attorneys' fees, costs, and expenses incurred in this adversarial proceeding seeking enforcement of the Agreement. Haynes Investments demanded adequate assurances of performance from Plain Green but Plain Green failed and refused to provide the same.

71. As a result of Plain Green's anticipatory repudiation, Haynes Investments will suffer damages from the failure to reimburse Haynes Investment for reasonable attorneys' fees, costs, and incurred expenses in this adversarial proceeding seeking enforcement of the Agreement.

## **PRAYER FOR RELIEF**

WHEREFORE, for the reasons set forth herein, Haynes Investments, LLC request that this Honorable Court enter judgment in favor of the Plaintiff and against Plain Green, LLC on all claims, and specifically that the Court award at least the following relief:

1. All of their actual and compensatory damages which may be proven in connection with their claims;
2. For a declaration that Plain Green is obligated to indemnify the Plaintiff in each of the covered lawsuits going forward including for any judgment verdict or settlement Plaintiff may be obligated to pay and for Plaintiff's costs, attorney fees and other damages incurred in defending the covered lawsuits to be proven at trial;
3. For an award of Haynes Investments costs of suit and reasonable attorneys' fees; and
4. Such other and further relief as the Court may deem just and proper.

Dated this 1st day of July, 2020

Worden Thane P.C.
Attorneys for Plaintiff

By: /s/ Martin S. King
    Martin S. King

## PROMISSORY NOTE

$4,269,000.00                                                    Dated: June 24, 2015

FOR VALUE RECEIVED, PLAIN GREEN, LLC, a tribally-owned entity organized under and governed by the laws of the Chippewa Cree Tribe of the Rocky Boy's Indian Reservation, Montana, with its principal executive office located at 93 Mac Road, Suite 600, Box Elder, MT 59521 (hereinafter referred to as the "Borrower") promises to pay to the order of Haynes Investments, Inc, a Texas Corporation, located at 5909 Luther Lane, Suite 1704, Dallas, Texas 75225, or its registered assign (the "Holder"), the principal sum of **FOUR MILLION TWO HUNDRED AND SIXTY-NINE THOUSAND** Dollars ($4,269,000), lawful money of the United States of America, or such lesser amount as shall be outstanding from time to time (the "Principal Amount"), together with interest accrued thereon, at the rate and on the terms set forth below representing the principal outstanding unpaid balance of that certain Credit Agreement between Borrower and Holder dated as of March 18, 2011 as amended as of April 5, 2011 each of which is hereby cancelled and are null and void.

1. PAYMENT OF PRINCIPAL AND INTEREST.

      (a) <u>Payment of Principal</u>. The Principal Amount shall be due and payable (i) on June 24, 2018 (the "Maturity Date") or (ii) if earlier, upon a Mandatory Prepayment Event (as defined in <u>Section 2</u>).

      (b) <u>Payment of Interest; Interest Rate.</u> Interest shall accrue on the unpaid Principal Amount of this Note at the rate of five percent (5%) per annum (the "Interest Rate") from the date hereof until paid in full. Interest on the unpaid Principal Amount of this Note shall be due and payable in arrears monthly commencing July 1, 2015 along with a principal payment of $118,583.33 each month for thirty six (36) months until the Principal Amount is paid in full.

      (c) <u>Default Rate; Late Payment Fee</u>. If any payment of principal or interest or other amount due under this Note is not paid when due (whether or not the Borrower is permitted to make any such payment under the provisions of hereunder) or if any amount due under this Note is not paid on the Maturity Date or upon a Prepayment Event, or if an event of default has occurred and is continuing under the Purchase Agreement, then from such applicable date until all such amounts due are paid in full or such event of default is cured, this Note shall bear interest at the Interest Rate plus four percent (4.00%) (the "Default Rate") and such interest shall be compounded on a quarterly basis during such period of any such default.

      (d) <u>No Usurious Payments</u>. Notwithstanding anything to the contrary contained herein or in any other document executed in connection herewith, the effective rate of interest hereunder shall not exceed the maximum effective rate of interest permitted by applicable law or regulation. If the Borrower shall have paid or agreed to pay any interest on this Note pursuant to the terms hereof in excess of that permitted by law, then it is the express intent of the Borrower and the Holder that all excess amounts previously paid or to be paid by the Borrower be applied to reduce the principal balance of this Note, and the provisions hereof immediately be deemed reformed and the amounts thereafter collectible hereunder reduced, without the necessity of the execution of any new document, so as to comply with then existing law, but so as to permit the recovery of the fullest amount otherwise called for hereunder. This provision shall survive repayment of this Note.

      (e) <u>Calculation of Interest; Maturity Date</u>. Interest under this Note shall be calculated on the basis of a 360-day year of twelve 30-day months. Any amounts then due and owing under this Note shall be due and payable on the Maturity Date.

#34234105 v2

EXHIBIT 1

(f) <u>Place and Method of Payment</u>. Payments of principal and interest and any other amounts due under this Note shall be paid to the Holder at the Holder's address of record as shown on the Note Register (as defined in Section 5 of this Note) or such other location designated by the Holder in writing to Borrower from time to time, and shall be made in currency of the United States of America as at the time of payment shall be legal tender for payment of public and private debts.

(g) <u>Business Day</u>. If the date on which any payment required to be made under this Note occurs on a day other than a Business Day, such payment shall be due and payable on the next succeeding Business Day and such extension of time shall be included in computing interest in connection with such payment.

(h) <u>Security</u>. This Note is secured by the rights of repayment on the Installment Loans to the Borrower. In the Event of Default, Borrower agrees to forward any repayment the Borrower receives on the installment loans made by Borrower directly to the Holder.

2. PREPAYMENT OF THIS NOTE.

(a) <u>Optional Prepayment</u>. The Borrower may prepay all or a part of the outstanding Principal Amount without penalty or premium at any time without penalty.

(b) <u>Mandatory Prepayment</u>. Upon the occurrence of an Event of Default that is continuing, the Borrower shall (without any action being required of the Holder) immediately repay all Principal Amount and accrued and unpaid interest and any other amounts then outstanding under this Note (a "**Mandatory Prepayment**").

3. EVENTS OF DEFAULT. Each of the following shall be an "**Event of Default**" hereunder:

(a) The failure of the Borrower to pay any installment of principal, interest or any other payment due under the terms of this Note within ten(10) days of the date any such payment is due;

(b) The failure of Borrower to observe or perform any material term, condition, agreement, covenant or provision or the breach of any representation or warranty, contained in this Note, and, if capable of being promptly cured, the continued failure of the Borrower to observe or perform any such term, condition, agreement, covenant or provision or cure any such breach for thirty (30) days after the Holder or other applicable party gives notice to Borrower thereof;

4. REMEDIES ON DEFAULT; NO WAIVER; ETC.

In case any one or more Events of Default shall occur and be continuing, the Holder may (i) at its election declare the entire unpaid balance of principal and interest and all other sums due under this Note to be immediately due and payable upon notice or demand (in which case, from and after an Event of Default, the unpaid balance of principal and interest shall accrue interest at the Default Rate, and all other sums due from the Borrower to the Holder shall also be immediately due and payable); and (ii) immediately and without demand exercise or cause to be exercised any rights and remedies provided in this Note or which may be available to the Holder at law, in equity, by statute, or otherwise, without further stay, any law, usage or custom to the contrary notwithstanding.

5. NOTICES, ETC.

All notices, waivers and other communications provided for hereunder shall be in writing, and shall be deemed to be given (a) when delivered, if delivered by hand (with written confirmation of receipt) or by telecopy (as evidenced by receipt of a confirmation), (b) one Business Day after sending, if sent by nationally

2

#34234105 v2

recognized overnight delivery specifying next day delivery (with written confirmation of receipt), or (c) three (3) days after depositing in the mails, if sent by certified mail with return receipt requested. All such notices, waivers and other communications shall be addressed to the party at the address next to their name at the beginning of this Note or, in each case, to such other addresses as shall be specified by notice.

### 6. COSTS AND EXPENSES.

The Borrower shall reimburse Holder upon demand, for all reasonable out-of-pocket costs and expenses incurred in connection with the collection and/or enforcement of this Note or any amounts payable pursuant hereto or with respect to any litigation or controversy arising from this Note (including, without limitation, attorneys' fees) whether or not suit is actually instituted.

### 7. GOVERNING LAW; CONSENT TO JURISDICTION; WAIVER OF JURY TRIAL.

THIS NOTE AND ALL RELATED INSTRUMENTS AND AGREEMENTS WILL BE DEEMED TO BE MADE IN THE STATE OF MONTANA. THIS AGREEMENT WILL BE INTERPRETED AND THE RIGHTS AND LIABILITIES OF THE PARTIES HERETO DETERMINED IN ACCORDANCE WITH THE LAWS OF THE STATE OF MONTANA, EXCLUDING ITS CONFLICT OF LAWS RULES. THE BORROWER HEREBY IRREVOCABLY CONSENTS TO THE EXCLUSIVE JURISDICTION OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA, PROVIDED THAT NOTHING CONTAINED IN THIS AGREEMENT WILL PREVENT THE HOLDER FROM BRINGING ANY ACTION, ENFORCING ANY AWARD OR JUDGMENT OR EXERCISING ANY RIGHTS AGAINST THE BORROWER INDIVIDUALLY, AGAINST ANY SECURITY OR AGAINST ANY PROPERTY OF THE BORROWER WITHIN ANY OTHER COUNTY, STATE OR OTHER FOREIGN OR DOMESTIC JURISDICTION. THE HOLDER AND THE BORROWER AGREE THAT THE VENUE PROVIDED ABOVE IS THE MOST CONVENIENT FORUM FOR BOTH THE HOLDER AND THE BORROWER. THE BORROWER WAIVES ANY OBJECTION TO VENUE AND ANY OBJECTION BASED ON A MORE CONVENIENT FORUM IN ANY ACTION INSTITUTED UNDER THIS AGREEMENT.

EACH OF THE BORROWER AND THE HOLDER IRREVOCABLY WAIVES ANY AND ALL RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR CLAIM OF ANY NATURE RELATING TO THIS AGREEMENT, ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS AGREEMENT OR ANY TRANSACTION CONTEMPLATED IN ANY OF SUCH DOCUMENTS. THE BORROWER AND THE HOLDER ACKNOWLEDGE THAT THE FOREGOING WAIVER IS KNOWING AND VOLUNTARY.

### 8. WAIVER OF SOVEREIGN IMMUNITY.

Borrower irrevocably (i) waives any sovereign immunity and any other privilege that may be asserted with such immunity or privilege from unconsented suit or proceedings and (ii) consents to any suit or any other legal proceedings, alternative dispute resolution, arbitration, enforcement and collection of judgment or award, injunction, specific performance, or declaratory relief conditioned only upon following limitations: the waiver is limited to actions or proceedings to (a) interpret or enforce the provisions of this Note, (b) assert or enforce equitable relief, including without limitation specific performance, (c) assert any damage claims arising out of the breach of this Note, and (d) enforce any agreement, order, judgment or ruling resulting from such an action including, but not limited to, any execution and collection of monetary damages, specific performance or injunctive relief. Actions or proceedings may be brought or made in a federal court sitting in the State of Montana (and including any court competent to hear appeals from those courts); but if such federal court is unable or unwilling to exercise jurisdiction, then in a Montana state court (and including any court competent to

#34234105 v2

hear appeals from those courts). The Borrower and the Holder hereby acknowledge that this express waiver extends only to actions brought by Holder, its successors and assigns (and not any other party) against Borrower or any other entity of the Tribe for claims of any kind arising under this Agreement.

### 9. SUCCESSORS AND ASSIGNS.

This Note may be assigned or transferred by the Holder to any person or entity. The Borrower may not assign or transfer this Note or any of its rights hereunder without the prior written consent of the Holder.

### 10. MISCELLANEOUS.

The provisions of this Note shall inure to the benefit of and shall be binding upon the Borrower and the Holder, and their respective heirs, legal representatives, successors and permitted assigns. If any term, provision, covenant or restriction of this Note is held by a court or a governmental agency of competent jurisdiction to be invalid, void or unenforceable, or to cause any party to be in violation of any applicable provision of law, the remainder of the terms, provisions, covenants and restrictions of this Note shall remain in full force and effect and in no way shall be affected, impaired or invalidated. This Note may not be amended or supplemented except in a writing signed by the Borrower and the Holder. No course of dealing and no failure on the part of the Holder to exercise, and no delay in exercising, any right hereunder shall operate as a waiver hereof, nor shall any single or partial exercise of any right hereunder or under this Note preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any other remedies provided by law, in equity or otherwise. This Note and the other documents referred to herein contain the entire agreement and understanding among the parties hereto with respect to the subject matter hereof and supersede and preempt any prior or contemporaneous understandings, agreements or representations by or among the parties, written or oral, which may have related to the subject matter hereof in any way. The Borrower hereby waives presentment, demand, protest, notice of protest, dishonor and all other notices or requirements of any kind, except as otherwise expressly required herein. The Borrower hereby waives all laws exempting real or personal property from execution.

WITNESS WHEREOF, the parties hereto have caused this Note to be executed by their respective duly authorized representatives, as of the date first written.

**BORROWER**                                **HOLDER**

PLAIN GREEN, LLC, an entity                 HAYNES INVESTMENTS, INC., a Texas
organized under and governed by the         Corporation
laws of the Chippewa Cree Tribe of the
Rocky Boy's Indian Reservation,
Montana

By: _____                 By: _____
Name: _____                 Name: _____
Title: CEO                                  Title: _____

4

#34234105 v2